UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**IRENE D. RODRIGUEZ,** *et al.*,

  **Plaintiffs,**

    v.

**DOUGLAS SHULMAN,** *et al.*,

  **Defendants.**

Civil Action No.  11-1183 (JEB)

## MEMORANDUM OPINION

Plaintiffs Isidoro and Irene Rodriguez claim that they have been the victims of a vast

multi-year conspiracy perpetrated by judges from the D.C. and Federal Circuit Courts, the D.C.

and Eastern District of Virginia District Courts, the D.C. Court of Appeals, the U.S. Tax Court,

and the Virginia Supreme Court, as well as by the Clerk of the U.S. Supreme Court, officials in

the Office of White House Counsel, attorneys from the Department of Justice and the U.S.

Attorney's Office for the District of Columbia, members of the Virginia State Bar Disciplinary

Board, members of the U.S. Judicial Conference, members of the D.C. Court of Appeals

Committee on Admissions, employees of the Internal Revenue Service, and various private

individuals and organizations.

As far as the Court can tell from Plaintiffs' turgid and rambling pleadings, two incidents

appear to form the linchpins of the conspiracy alleged in this case, which is merely the latest in a

long series of suits brought by Isidoro in this court and others.  First, the Disciplinary Board of

the Virginia State Bar in 2006 revoked Isidoro's license to practice law in Virginia.  Second, the

IRS disallowed certain deductions relating to the Rodriguezes' 2006 federal tax return.  Those

responsible for these two incidents and those judges and officials who subsequently denied him

relief, Plaintiffs maintain, conspired to violate his rights under various constitutional provisions, statutes (both civil and criminal, and both state and federal), and doctrines.

Four groups of Defendants have now filed Motions to Dismiss on myriad grounds, and one group has filed a Motion for Sanctions requesting that the Court impose a pre-filing injunction to prevent further litigation of these issues.  Because Plaintiffs have already unsuccessfully litigated their claims relating to Isidoro's disbarment and because those claims, as well as their causes of action relating to the tax dispute, are defective in numerous other respects, the Court will grant Defendants' Motions to Dismiss with respect to the entire case.  Although it is a close question, the Court will deny the Motion for Sanctions.

## I.      Background

Plaintiffs Isidoro and Irene Rodriguez believe government officials and private individuals have for several years been embarked on a conspiracy to deprive Isidoro of his license to practice law and force him to pay more taxes than he believes he owes.  Irene has no stake in the disbarment fight, but she may, although the Amended Complaint does not elucidate this, have some part in the tax claim.  Many of the details of this purported conspiracy, which according to Plaintiffs constitutes an "attempt to use status and position to deceive the public" in the manner depicted by Hans Christian Anderson's *The Emperor's New Suit* (1837), see Opp. to Commonwealth Dfts. Motion at 7 n.13, are laid out in several similar cases brought by Isidoro in recent years.  See, e.g., In re Isidoro Rodriguez, No. 10691-09, ECF No. 47-1 (Tax Ct., Oct. 16, 2009).  To summarize, Plaintiffs' contentions are as follows.

According to the First Amended Complaint, which must be assumed true for the purpose of resolving the instant Motions, Isidoro, who had theretofore been a member of the Virginia Bar, was disbarred in 2006.  See First Am. Compl., ¶ 44.  The Virginia State Bar Disciplinary

Board's decision to revoke his law license, it seems, was based on actions he took in two series

of cases, one involving attorney fees he believed he was owed in relation to the salvage of

sunken treasure off the Colombia coast, the other relating to a custody dispute over his son.  See

id., ¶¶ 38-41.  Plaintiffs suggest that the Board's Order was void because it was based on

unconstitutional rules that operated to punish him for exercising his right to litigate to enforce his

statutory and treaty rights.  See id., ¶¶ 41-44.  The Supreme Court of Virginia and other courts,

however, have subsequently upheld his disbarment.  See id., ¶¶ 45-47, 57.  In addition, several

courts have relied on the Board's order in reciprocally disbarring Isidoro from practice within

their jurisdictions.  See id., ¶¶ 45-47, 51, 62-64.  Various officials and attorneys, moreover, have

responded to Plaintiffs' lawsuits and acted to enforce these courts' decisions.  See id., ¶¶ 49, 52,

56-57.

In 2009, Plaintiffs contend that the conspiracy against them was compounded when the

IRS disallowed various exemptions claimed by the Rodriguezes on their 2006 federal tax return.

See id., ¶¶ 50, 53, 94.  Specifically, they allege that IRS employees unlawfully declined to allow

them deductions for self-employment income and operating expenses they had attempted to

claim on their return.  See id., ¶ 94.

Plaintiffs filed a Complaint initiating the instant suit on June 28, 2011.  They filed a First

Amended Complaint on October 19, 2011.  In it, they maintain that various judges, federal and

state officials, and private individuals conspired to deprive Isidoro of his right to work as an

attorney and several thousand dollars in tax deductions.  See generally First Am. Compl.  Their

pleading contains numerous counts citing a bevy of constitutional and statutory provisions and

other legal doctrines.  See id.  Since filing their Complaint, Plaintiffs have moved, *inter alia*, for

an Associate Justice of the Supreme Court to appoint an "impartial senior retired judge" not from

the 2nd, 3rd, 4th, 5th, 11th, or D.C. Circuits to hear this case and for a Temporary Restraining Order to prevent various courts from enforcing orders issued against him.  The Court has denied these largely indecipherable Motions.  Four groups of Defendants have now filed Motions to Dismiss, and the Commonwealth Defendants have filed a Motion for Sanctions.  It is to these Motions the Court now turns.

## II.    Legal Standard

In evaluating Defendants' Motions to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" <u>Sparrow v. United Air Lines, Inc.</u>, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting <u>Schuler v. United States</u>, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); <u>see also</u> <u>Jerome Stevens Pharms., Inc. v. FDA</u>, 402 F.3d 1249, 1253 (D.C. Cir. 2005). This standard governs the Court's considerations of Defendants' Motions under both Rules 12(b)(6) and 12(b)(1).  <u>See</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974) ("in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader"); <u>Walker v. Jones</u>, 733 F.2d 923, 925-26 (D.C. Cir. 1984) (same).  The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint.  <u>Trudeau v. Fed. Trade Comm'n</u>, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted."  Although the notice pleading rules are "not meant to impose a great burden on a plaintiff," <u>Dura Pharm., Inc. v. Broudo</u>, 544

4

U.S. 336, 347 (2005), and "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). Plaintiffs must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> Though Plaintiffs may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," <u>Twombly</u>, 550 U.S. at 555 (citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 555.

To survive a motion to dismiss under Rule 12(b)(1), Plaintiffs bear the burden of proving that the Court has subject matter jurisdiction to hear their claims. <u>See Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992); <u>U.S. Ecology, Inc. v. U.S. Dep't of Interior</u>, 231 F.3d 20, 24 (D.C. Cir. 2000). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." <u>Grand Lodge of Fraternal Order of Police v. Ashcroft</u>, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the Plaintiff[s'] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." <u>Id.</u> at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1350 (2d ed. 1987) (alteration in original)). Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." <u>Jerome Stevens</u>, 402 F.3d at 1253; <u>see also Venetian Casino Resort, L.L.C. v. E.E.O.C.</u>, 409 F.3d 359, 366 (D.C. Cir. 2005) ("given the present posture of this case — a

dismissal under Rule 12(b)(1) on ripeness grounds — the court may consider materials outside the pleadings"); <u>Herbert v. Nat'l Academy of Sciences</u>, 974 F.2d 192, 197 (D.C. Cir. 1992).

## III.    Analysis

Plaintiffs' First Amended Complaint contains either ten or twelve counts (depending on whether "A" and "C" were intended as counts), helpfully numbered I, A, C, II, III, V, VI, VII, VIII, IX, X, IX.  <u>See</u> First Am. Compl. at 26-41.  For clarity's sake, the Court will refer to the counts as they are numbered in the Complaint, with the exception of the final count, which, to avoid further complicating matters with two counts numbered "IX," it will refer to as "XI."

Most of these counts — all except II and III — concern Isidoro's disbarment in the state of Virginia and subsequent, reciprocal disbarment from practice before individual courts.  When Isidoro was disbarred, various courts upheld his disbarment, and various courts relied on his disbarment to prohibit him from practicing law in their jurisdictions.  Such actions, Plaintiffs claim, violated the civil RICO statute, the Constitution, various statutes, and Virginia law.  The Court will address these claims in Section III.A, *infra*.  In Section III.B, the Court will consider the two counts related to Plaintiffs' 2006 tax return, which purport to state claims under 26 U.S.C. §§ 7214 and 7433.  Ultimately, the Court will dismiss on various grounds all of Plaintiffs' federal claims against all Defendants.  As a result, it declines in Section III.C to exercise supplemental jurisdiction over any remaining state law claims.  As it will elaborate in Section III.D, however, the Court determines at this juncture not to grant the Motion for Sanctions.

A.  <u>Federal Claims Relating to Isidoro's Disbarment</u>

In their four Motions to Dismiss, Defendants raise multiple arguments concerning purported defects in Plaintiffs' First Amended Complaint with respect to the disbarment-based claims.  Because the doctrines of claim and issue preclusion appear to bar all of these causes of

action, the Court will begin its analysis there.  Although preclusion seems to dispose of these counts in their entirety, the Court will also briefly discuss a few other grounds for their dismissal, focusing in the interest of efficiency on those arguments applicable to groups of defendants or multiple counts.

      1. *Preclusion*

Isidoro has sought on numerous occasions to challenge his disbarment, the rules pursuant to which it took place, the Virginia Supreme Court's decision upholding it, and various courts' reliance on it to reciprocally disbar him within their jurisdictions.  While the named Defendants change somewhat from case to case (notably, most judges who decide issues against him are added to the roster in subsequent suits) and the causes of action are not always identical, his central argument — that his license to practice law in Virginia was unlawfully revoked — remains the same.

In May 2007, Isidoro filed a complaint in this district alleging that a slew of Defendants, many of whom are also named in the instant case, violated RICO, various constitutional amendments, and statutory provisions including 42 U.S.C. §§ 1983 and 1985(3) by, *inter alia*, revoking his license to practice law in Virginia.  See Compl., <u>Rodriguez v. Editor in Chief, Legal Times, *et al.*</u>, No. 07-975, ECF No. 1, ¶¶ 181-82, 195, 217, 219, 221, 230.  Judge Paul L. Friedman dismissed the case on judicial immunity grounds and for lack of venue, <u>see</u> Mem. Op. & Order, <u>Rodriguez</u>, No. 07-975, ECF No. 28 at 6 (June 18, 2007), and the D.C. Circuit affirmed on several grounds not relied upon by the district court.  <u>See</u> <u>Rodriguez v. Editor in Chief</u>, 285 Fed. Appx. 756, 758-60 (D.C. Cir. 2008).  Most relevant here, the D.C. Circuit held that those claims that "challenge[d] decisions by the Virginia state bar and the Virginia courts," along with those that were "inextricably intertwined with such decisions," were barred by the <u>Rooker-</u>

<u>Feldman</u> doctrine and principles of <u>Younger</u> abstention.  <u>See id.</u> at 759.  The Court also found

that Isidoro had failed to adequately state "all of [his] federal claims" because, for example, he

had pled no facts suggesting a "unity of purpose" or a "meeting of the minds" for any RICO or

conspiracy allegation.  <u>Id.</u>

In April 2009, the D.C. Circuit again ruled on the issue of Isidoro's disbarment when it

issued an order prohibiting Isidoro from practicing law before that court and from holding

himself out as an attorney licensed to do so.  <u>In re Rodriguez</u>, 2009 WL 1953670, at *1 (D.C.

Cir. 2009).  The court held that Isidoro "ha[d] not demonstrated . . . that the Virginia State Bar

disciplinary proceeding suffered from a lack of due process or infirmity of proof . . . ."  <u>Id.</u>

Most recently, in November 2010, this Circuit again considered Isidoro's claim that his

disbarment was unlawful when it upheld the U.S. Tax Court's order disbarring him from practice

before that court.  <u>Rodriguez v. U.S. Tax Court</u>, 398 Fed. Appx. 614 (D.C. Cir. 2010).  The court

stated:

> [Plaintiff] has not demonstrated that the Tax Court proceedings
> suffered from a lack of due process or infirmity of proof or that
> disbarment would result in grave injustice. . . .  To the extent [he]
> challenges the disbarment order as being based on a Virginia State
> Disciplinary Board order that violates Virginia law, the Tax Court
> properly relied on the Virginia Supreme Court's decision affirming
> the Virginia State Disciplinary Board's disbarment order. . . .  Nor
> has appellant shown that the Tax Court disbarred him for litigating
> to enforce his statutory rights or as the result of a conspiracy.

<u>Id.</u> at 614.

The D.C. Circuit, therefore, has on multiple occasions considered and rejected Isidoro's

challenges to his disbarment as well as other courts' reliance on the Virginia Board's decision in

reciprocally disbarring him from practice.  Courts in other jurisdictions have reached the same

conclusion in cases brought by Isidoro presenting the same facts.  <u>See, e.g.</u>, <u>In re Isidoro</u>

Rodriguez, No. 06-9518, slip. op. at 7 (4th Cir., Oct. 20, 2008) ("[T]he Disciplinary Board's revocation of Rodriguez's license to practice in the Commonwealth of Virginia must be deemed valid . . . ."); In re Rodriguez, 304 Fed. Appx. 947, 954 (3d Cir. 2008) ("[I]t is perfectly clear that the Virginia proceedings were valid as a matter of federal law and Rodriguez's contentions to the contrary are completely unmeritorious and require no discussion."); In re Isidoro Rodriguez, No. 10691-09, ECF No. 47-1 at 18-19 ("[W]e reject Mr. Rodriguez's argument that the order of the Disciplinary Board is void.").

To the extent this case involves the same parties as his prior cases, his claims stemming from and "inextricably intertwined with" his disbarment are barred by the doctrine of claim preclusion (also known as *res judicata*).   "A subsequent lawsuit is barred by claim preclusion 'if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction.'"   Natural Res. Def. Council v. EPA, 513 F.3d 257, 260 (D.C. Cir. 2008) (quoting Smalls v. United States, 471 F.3d 186, 192 (D.C. Cir. 2006)).   Whether a case presents "the same cause of action turns on whether [the lawsuits] share the same nucleus of facts."   Apotex, Inc. v. FDA, 393 F.3d 210, 217 (D.C. Cir. 2004).   Each of these elements is present here with respect to those Defendants, such as the justices of the Virginia Supreme Court and the members of the Virginia State Bar Disciplinary Board, who were involved in these earlier cases.

That Isidoro's arguments may differ somewhat from those presented previously does not allow him a second (or, perhaps more accurately, seventh) bite at the apple.   Claim preclusion "bars relitigation not only of matters determined in a previous litigation but also ones that a party could have raised."   NRDC v. Thomas, 838 F.2d 1224, 1252 (D.C. Cir. 1988) (emphasis added);

see also Natural Res. Def. Council, 513 F.3d at 261("Claim preclusion is . . . intended 'to prevent litigation of matters that should have been raised in an earlier suit.'" (quoting SBC Commc'ns Inc. v. FCC, 407 F.3d 1223, 1230 (D.C. Cir. 2005)) (emphasis in original)).

With respect to his claims against parties not named as Defendants in the prior cases, issue preclusion serves as a bar to all of his claims that rely on his argument that the Virginia disbarment and the Virginia Supreme Court's decision upholding it were unlawful.  "The objective of the doctrine of issue preclusion (also known as collateral estoppel) is judicial finality; it fulfills 'the purpose for which civil courts had been established, the conclusive resolution of disputes within their jurisdiction.'"  Yamaha Corp. of America v. U.S., 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting Kremer v. Chemical Contr. Corp., 456 U.S. 461, 467 n.6 (1982)).  To that end, the doctrine provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."  Allen v. McCurry, 449 U.S. 90, 94 (1980).

Issue preclusion requires three elements: first, "the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case"; second, "the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case"; and third, "preclusion in the second case must not work a basic unfairness to the party bound by the first determination."  Martin v. DOJ, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting Yamaha Corp., 961 F.2d at 254) (internal quotation marks omitted).  Unlike claim preclusion, "issue preclusion does not require mutality of parties."  Gov't of Rwanda v. Johnson, 409 F.3d 368, 374 (D.C. Cir. 2005) (citing Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313 (1971)).

There can be no doubt that the issue of whether Isidoro's disbarment was lawful has — more than once — been contested and submitted for judicial determination and actually and necessarily been determined.  The Court can conceive of no reason, furthermore, that precluding further litigation of this issue works any unfairness against Isidoro.  Cf., e.g., Yamaha Corp., 961 F.2d at 254 ("An example of such unfairness would be when the losing party clearly lacked any incentive to litigate the point in the first trial, but the stakes of the second trial are of a vastly greater magnitude."); Parklane Hosiery Co. v. Shore, 439 U.S. 322, 330 (1979) (unfairness concern heightened when plaintiff seeks to use collateral estoppel "offensively" against defendant when plaintiff was not party to prior suit); Blonder-Tongue Labs., 402 U.S. at 333 (fairness implicated when prior proceedings "seriously defective").  Although courts are sometimes hesitant to allow parties to use non-mutual issue preclusion offensively, cf. Parklane Hosiery, 439 U.S. at 329-33, the concerns motivating that hesitancy are not present where, as here, issue preclusion is used defensively.

Even if Plaintiffs raise new legal theories regarding the unlawfulness of Isidoro's disbarment in this case, moreover, those theories are so related to the previously litigated questions that they do not constitute distinct "issues."  "If a new legal theory or factual assertion put forward in the second action is related to the subject-matter and relevant to the issues that were litigated and adjudicated previously, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged." Yamaha Corp., 961 F.2d at 257-58 (quoting James Wm. Moore, Jo Desha Lucas & Thomas S. Currier, 1B Moore's Federal Practice ¶ 0.443(2) at 760-61 (1988)) (emphasis in original).

In response to Defendants' arguments concerning claim and issue preclusion, Plaintiffs, perplexingly, assert that "pursuant to **_Rooker_**, **_Feldman_**, and the *Void* Order Doctrine, the . . .

argument that the twine [*sic*] doctrines of collateral estoppel, and *res judicata* apply — is pure

legal sophistry."  Opp. to Commonwealth Dfts. Motion at 22 (emphases in original); <u>see also</u>

Opp. to D.C. Defendants' Motion at 31-32.  Reading this nonsensical argument in the most

favorable light, Plaintiffs seem to maintain that because the order that disbarred him was "void,"

any judicial decision relying on that order was similarly void and therefore does not preclude his

claims.  The D.C. Circuit (in addition to various other courts), however, has already considered

and rejected his argument that the original order was void.  In other words, even his argument

against preclusion appears to be precluded.  In any event, the Court rejects Plaintiffs' invitation

to allow relitigation of any decision a plaintiff believes was contrary to law.  Such a result would

entirely moot the preclusion doctrines and destroy all pretense of judicial finality.

　　　Plaintiffs also argue that because one of their prior cases was dismissed without

prejudice, it does not constitute a final disposition of their claims on the merits so as to result in

preclusion.  Although Plaintiffs are correct that Judge Friedman dismissed portions of Isidoro's

2007 suit without prejudice on venue grounds, <u>see</u> Mem. Op. & Order, <u>Rodriguez v. Editor in</u>

<u>Chief, Legal Times, *et al.*</u>, No. 07-975, ECF No. 28 at 6 (June 18, 2007), the D.C. Circuit

explicitly affirmed the dismissal "on grounds other than those relied upon by the district court."

<u>Rodriguez</u>, 285 Fed. Appx. at 758.  Indeed, the court expressly stated even then — which was

before further litigation of this issue in this circuit and others — that "the doctrines of claim

preclusion . . . and issue preclusion . . . likely bar further litigation on these issues against these

parties."  <u>Id.</u> at 760.  In any event, even a jurisdictional judgment that results in dismissal without

prejudice may have nevertheless have issue preclusive — if not claim preclusive — effect.  <u>See</u>

<u>NextWave Personal Communications, Inc. v. FCC</u>, 254 F.3d 130, 147-49 (D.C. Cir. 2001).

More importantly, even if the Circuit's decision in that case did not have preclusive effect, other

cases in the D.C. Circuit and elsewhere have clearly held, as necessary parts of final judgments, that Isidoro's disbarment was lawful.  See, e.g., Rodriguez, 398 Fed. Appx. at 614; In re Rodriguez, 2009 WL 1953670, at *1; In re Isidoro Rodriguez, No. 06-9518, slip. op. at 7; In re Rodriguez, 304 Fed. Appx. at 954; In re Isidoro Rodriguez, No. 10691-09, ECF No. 47-1 at 18-19.

To the extent that Plaintiff has attempted to get around preclusion by focusing his contentions on acts allegedly taken after the filing of his previous suits — *i.e.*, by focusing on the subsequent decisions of various courts to rely on his Virginia disbarment in disbarring him from practice within their jurisdictions — such efforts ultimately fail.  Plaintiffs' claims all depend on his theory that the order disbarring him from practice in Virginia was void, and they proffer no challenge to Isidoro's subsequent reciprocal disbarments that is independent from this argument. As this issue has been squarely and finally decided, he cannot escape the preclusive effects of these prior judicial determinations.

### 2.  *Failure to State a Claim*

Even were Plaintiffs' claims concerning his disbarment not claim- or issue-precluded, they would nonetheless be subject to dismissal for failure to state a claim.  First, as the D.C. Circuit has now twice held when presented with similar suits brought by Isidoro, Plaintiffs' § 1985(3) claim "fail[s] to allege[ ] any equal protection claim based upon a conspiracy motivated by a racial or class-based discriminatory animus."  See Rodriguez, 285 Fed. Appx. 759 (citing In re Rodriguez, 2005 WL 3843612, at *4 (D.C. Cir. 2005)).  Second, as with his prior suit, all of the remaining federal claims relating to Isidoro's disbarment, "which involve allegations of a wide-ranging, multi-year conspiracy among federal and state courts, federal and state agencies, and private defendants, are subject to dismissal for fail[ure] to state a claim upon which relief

may be granted simply because 'it is patently obvious that [plaintiff] could not have prevailed on the facts alleged in his complaint.'" Id. (quoting Baker v. Director, U.S. Parole Comm'n, 916 F.2d 725, 727 (D.C. Cir. 1990) (per curiam)) (alteration in original).  Specifically, although Plaintiffs state that Defendants constituted an enterprise and that they acted "within a consensual decision-making structure," First Am. Compl., ¶ 74, such statements are mere legal conclusions. Their First Amended Complaint "include[s] no facts suggesting 'unity of purpose' or a 'meeting of the minds' among the defendants, a necessary element of a conspiracy." Rodriguez, 285 Fed. Appx. at 759 (citing Kreuzer v. Am. Academy of Periodontology, 735 F.2d 1479, 1487 (D.C. Cir. 1984)).  It simply does not meet the pleading standards set out in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).

　　　3.  *Judicial Immunity*

　　　Judicial immunity, too, bars all of Plaintiffs' counts that name judges.  Because judicial independence is central to the administration of justice, it has long been established that "judges . . . are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or wantonly." Stump v. Sparkman, 435 U.S. 349, 356-57 (1978); see also Bradley v. Fisher, 13 Wall. 335, 351 (1871).  Unless an action is "taken in the complete absence of all jurisdiction," judges are absolutely immune from "suits for money damages for all actions taken in the judge's judicial capacity." Sindram v. Suda, 986 F.2d 1459, 1460 (D.C. Cir. 1993).

　　　Plaintiffs maintain that Isidoro's disbarment was unconstitutional and that federal and state courts should not have subsequently recognized the disbarment order when determining whether to revoke his license to practice in their jurisdictions. See First Am. Compl., ¶ 56. As the D.C. Circuit has already held previously, Plaintiffs' claims against the judicial Defendants

14

plainly concern actions taken within their judicial capacities, and Plaintiffs have made no colorable argument that the judicial Defendants acted in the complete absence of jurisdiction. Indeed, the D.C. Circuit has already held to the contrary.  See Rodriguez v. Editor in Chief, Legal Times, 2007 WL 5239004, at *2 (D.C. Cir. 2007) ("The district court correctly determined that appellant's damages claims against all federal and state judge defendants are barred by absolute judicial immunity because appellant's challenges clearly concern acts committed within those defendants' judicial jurisdiction.").

Judicial immunity also applies to the Defendants who served on the Virginia State Bar Disciplinary Board and the D.C. Committee on Admissions.  Consistent with the Supreme Court's decision in Butz v. Economou, 438 U.S. 478 (1978), officials who act in a quasi-judicial capacity are entitled to quasi-judicial immunity.  See id. at 514.  This immunity has traditionally been extended to members of boards of law examiners or of boards that have the power to revoke attorneys' licenses.  See, e.g., Simons v. Bellinger, 643 F.2d 774, 799 (D.C. Cir. 1980); LaNave v. Minnesota Supreme Court, 915 F.2d 386, 387 (8th Cir. 1990).  Indeed, the D.C. Circuit has extended judicial immunity to the members of the Virginia Board and the D.C. Committee on Admissions in one of Isidoro's prior suits.  See Rodriguez, 2008 WL 2396189, at *1 (clarifying that court's reference to "'federal and state judge defendants' who are entitled to judicial immunity" includes "those Virginia state defendants who were involved in adjudicating bar disciplinary proceedings"); Rodriguez, 2007 WL 5239004, at *1 ("The Committee on Admissions of the District of Columbia Court of Appeals is entitled to absolute judicial immunity against damages claims when acting within its jurisdiction.").

As the Supreme Court has emphasized, judicial immunity exists because "[t]he loser in one forum will frequently seek another, charging the participants in the first with

unconstitutional animus." Butz, 438 U.S. at 512.  Having perfected a practice of naming as

Defendants nearly every judge who issues a decision with which Isidoro disagrees, Plaintiffs are

precisely the kind of litigants against whose claims judicial immunity was designed to guard.  All

claims against judicial Defendants, the Virginia Board Defendants, and the D.C. Committee

Defendants, therefore, could not stand even absent prior preclusion.

### 4.  *Qualified Immunity*

In addition, qualified immunity bars claims against public officials for civil damages

"insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

For a right to be "clearly established," its contours "must be sufficiently clear that a reasonable

official would understand that what he is doing violates that right." Brogsdale v. Barry, 926 F.2d

1184, 1189 (D.C. Cir. 1991) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  With

regard to those claims stemming from Isidoro's disbarment, our Circuit has already held that he

"ha[d] not demonstrated, and the Court [did] not find, that the Virginia State Bar disciplinary

proceeding suffered from a lack of due process or infirmity of proof, that disbarment would

result in grave injustice, or that substantially different discipline is warranted." In re Rodriguez,

2009 WL 1953670, at *1.  Because Isidoro's disbarment did not violate any constitutional right

— let alone one that was clearly established — neither did his subsequent disbarring in various

federal courts nor the actions taken by DOJ attorneys in enforcing his disbarment, see First Am.

Compl., ¶¶ 49, 56, 57, violate a clearly established constitutional right.  All claims against

federal and state officials relating to Isidoro's disbarment, accordingly, are barred by qualified

immunity.

### 5.  *Mail and Wire Fraud*

It is not clear whether Plaintiffs seek to bring independent claims for mail and wire fraud, or whether they merely argue that acts of mail and wire fraud were predicate acts of racketeering activity under RICO.  See First Am. Compl., ¶¶ 80-83.  Had Plaintiffs intended to bring independent claims under these criminal statutes, however, they, too, are subject to dismissal. Consistent with the presumption against implying private rights of action from criminal statutes, see Sanchez-Espinoza v. Reagan, 770 F.2d 202, 210 (D.C. Cir. 1985), Plaintiffs lack a private right of action under the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.  See, e.g., Kurtz v. U.S., 798 F. Supp. 2d  285, 290 (D.D.C. 2011) (mail fraud) (citing RJ Prod. Co. v. Nestle USA, Inc., 2010 WL 1506914, at *2 n.1 (D.D.C. 2010) (both mail and wire fraud)).  They cannot, therefore, bring these claims in a civil suit.

In sum, all of Plaintiffs' causes of action — with the exception of the soon-to-be-discussed Counts II and III — must be dismissed.  They are all barred by claim and issue preclusion, and even if they were not, they do not state claims upon which relief may be granted and fail to clear the obstacles of judicial and qualified immunity.

B.  Tax Claims

Plaintiffs' second set of claims relate to certain deductions disallowed on their 2006 federal income tax return.  See First Am. Compl., ¶¶ 93-97.  In Count II, they contend that certain IRS employees violated 26 U.S.C. § 7214 by denying the Rodriguezes "their statutory right to declare FY 2006 Sch. C 1040 self-employment cash income, self-employment W-2 income, and to deduct operating costs/litigation expenses in accordance with 26 U.S.C. §§ 162(a) and 280A(c)(1)(A)."  Id., ¶¶ 93-95.  In Count III, Plaintiffs maintain that the "United States [is] liable for compensatory and punitive damages" pursuant to 26 U.S.C. § 7433.  Id., ¶¶ 96-97. Although the tax issue does not appear to have been raised in Plaintiffs' prior lawsuits, their

claims are nevertheless deficient.  Because there is no private right of action under 26 U.S.C. §

7214, Count II must be dismissed.  With regard to Count III, Plaintiffs have failed to name the

proper party — the United States — as a defendant, and, even if they had, they have not

exhausted their administrative remedies under 26 U.S.C. § 7433.

> 1. *26 U.S.C § 7214*

In Count II, Plaintiffs purport to bring a claim under 26 U.S.C. § 7214.  "Section 7214,"

however, "is a criminal statute that does not provide for a private right of action and thus is not

enforceable through a civil action."  Bryant v. U.S. Gov't, 527 F. Supp. 2d 137, 142 (D.D.C.

2007) (internal quotation marks and citations omitted); see also Nordbrok v. U.S., 96 F. Supp. 2d

944, 948 (D. Ariz. 2000); U.S. v. Ralidis, 2006 WL 598188, at *7 (W.D. Tex. 2006).   Count II,

accordingly, must be dismissed.

> 2. *26 U.S.C. § 7433*

Unlike § 7214, § 7433, which provides for civil damages against the United States for

civil claims arising from certain unauthorized collection activities, does establish a private right

of action.  Plaintiffs, however, did not name the United States as a defendant as the statute

requires.  See 26 U.S.C. § 7433(a) ("[T]axpayer may bring a civil action for damages against the

United States in a district court," and "such civil action shall be the exclusive remedy for

recovering damages resulting from such actions.").  The Court, accordingly, will dismiss this

count without prejudice.  In so doing, it also notes that Plaintiffs have not pled and the Court has

been provided with no indication that they have satisfied their exhaustion obligations under the

statute.  See id. § 7433(d)(1) (United States only waives immunity when "plaintiff has exhausted

the administrative remedies available . . . within the Internal Revenue Service").  Plaintiffs need

not have affirmatively pled exhaustion, and the Court therefore does not decide at present

whether they have satisfied the exhaustion requirement.  See Ramer v. U.S., 620 F. Supp. 2d 90,

99-100 (D.D.C. 2009).  Should they decide to bring their § 7433 claim in a subsequent suit,

however, Plaintiffs would be well advised to ensure they have complied with the statute's

exhaustion requirements.

      C.  Remaining State Law Claims

      Insomuch as Count XI purports to make out a state law conspiracy claim, see First. Am.

Compl., ¶¶ 125-27, or the First Amended Complaint implicitly contains other state law claims,

the Court, having disposed of all claims over which it has original jurisdiction, declines to

exercise supplemental jurisdiction over them.  See 28 U.S.C. § 1367(c)(3).  The decision of

whether to exercise supplemental jurisdiction where a court has dismissed all federal claims is

left to the court's discretion, as "pendent jurisdiction is a doctrine of discretion, not of plaintiff's

right."  United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).  When deciding

whether to exercise pendent jurisdiction over state claims, federal courts should consider

"judicial economy, convenience and fairness to litigants."  Id.  "[I]n the usual case in which all

federal-law claims are eliminated before trial, the balance of factors to be considered under the

pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the

remaining state-law claims."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988);

see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1267 (D.C. Cir.

1995) (finding the discretion set out in Carnegie-Mellon Univ. "unaffected by the subsequent

enactment of 28 U.S.C. § 1367(d), in the Judicial Improvements Act of 1990.").

      Here, all factors weigh against the Court's retaining any remaining state law claims.  This

case has not progressed past the Motion to Dismiss stage, nor has the Court invested substantial

time and resources in the case.  If Plaintiffs believe that state law claims remain, they will not be

prejudiced by the Court's declining to exercise jurisdiction over them because 28 U.S.C. § 1367(d) provides for the tolling of any statute of limitations during the period the case was before this court and for at least 30 days thereafter.  See Shekoyan v. Sibley Int'l, 409 F.3d 414, 419 (D.C. Cir. 2005).  The Court, therefore, will dismiss without prejudice the state law conspiracy claim along with any other state law claims nested in Plaintiffs' tortuous Complaint.

D.  Sanctions

Understandably frustrated by Plaintiffs' repeated challenges to Isidoro's Virginia disbarment, the Commonwealth Defendants have taken the extra step of asking this Court to issue Rule 11 sanctions in the form of a "pre-filing injunction barring Isidoro Rodriguez from filing any other federal actions related to the revocation of Rodriguez's license to practice law." Mot. for Sanctions at 3.  Although this is not an unreasonable request, given the circumstances, the Court believes it is not yet warranted here.

The Commonwealth Defendants set forth the defects of Plaintiffs' claims, see id. at 5-8, but they do not discuss the legal standard the Court must apply in issuing such an injunction or how they have satisfied it here.  In In re Powell, 851 F.2d 427 (D.C. Cir. 1988), the D.C. Circuit took a close look at pre-filing injunctions and developed a three-part analysis.  First, concerned with the possible deprivation of due process that a pre-filing injunction could cause, the Court required that courts give the filer an opportunity to oppose the entry of this kind of order.  See id. at 431 ("Due process requires notice and an opportunity to be heard."). Second, a court should create a record for review in order to further ensure that the filer's due process rights are not violated.  Id. Third, in issuing a pre-filing injunction, a court must also "make substantive findings as to the frivolous or harassing nature of the litigant's actions."  Id.  In Powell, the D.C. Circuit could not find that the plaintiff's filings, though numerous, contained any frivolous or

harassing claims and thus reversed an injunction ordered by the district court.  Id. at 434 ("Both

the number and content of the filings bear on a determination of frivolousness or harassment.").

After Powell, the D.C. Circuit has repeated that the three steps mandated by that decision

must be fulfilled before a pre-filing injunction is granted.  A court must have "(1) created an

adequate record for review; (2) provided notice and an opportunity to be heard; and (3) made

substantive findings as to the frivolous and harassing nature of the litigants' actions." Kaempfer

v. Brown, 872 F.2d 496, 496 (D.C. Cir. 1989).  Failing to follow these steps can lead to the

injunction being vacated.  See, e.g., Richardson v. District of Columbia, 2008 WL 2396186, at

*1 (D.C. Cir. February 13, 2008) (injunction vacated because district court had not made

"substantive findings as to the frivolous . . . nature of the litigant's actions"); Dua v. United

States, 1996 WL 310158, at *1 (D.C. Cir. May 24, 1996) (injunction vacated because district

court failed to give filer chance to oppose motion); Pryor v. Barry, 1996 WL 393472, at *1 (D.C.

Cir. June 21, 1996) (injunction vacated because district court failed to give filer chance to oppose

motion and because it was not supported by substantive findings).

In the present case, Plaintiffs had the opportunity to be heard in relation to this Motion;

indeed, they filed a lengthy Opposition.  The Court, as has been discussed in Sections III.A and

III.B, supra, also believes that the lion's share of both this suit and those previously filed by

Isidoro is both frivolous and harassing to the different categories of defendants sued.  The Court,

nonetheless, is not yet prepared to enter a pre-filing injunction.  Isidoro's actions, while very

close to the line, may not yet be so egregious as to require such an "extreme remedy . . . [that]

should be used only in exigent circumstances." Powell, 851 F.2d at 431 (internal citations

omitted).

Although he has been litigious, "mere litigiousness alone does not support the issuance of an injunction." Id. at 434. For that matter, the number of suits Isidoro has filed is hardly impressive when compared to the records of other prolific filers. See, e.g., Anderson v. District of Columbia Public Defender Service, 881 F. Supp. 663, 667 (D.D.C. 1995) (plaintiff had filed at least 30 suits, all in District Court for the District of Columbia in period of six years); Lee v. State Compensation Ins. Fund,, 2005 WL 1903343, at *2 (D.D.C. July 13, 2005) (plaintiff had filed over a dozen suits with same court in span of thirteen months.).

In addition, while there has been harassment, the severity does not quite rise to the level of requiring an injunction. See, e.g., Rogers v. Johnson-Norman, 514 F. Supp.2d 50, 53 (D.D.C. 2007) (court held that while plaintiff had harassed defendant in this case, there was not enough of a pattern of harassment to warrant extreme remedy of pre-filing injunction); Speleos v. McCarthy, 201 B.R. 325, 330 (D.D.C. 1996) (district court hesitant to grant injunction even when bankruptcy court had previously found the plaintiff's filings to be both frivolous and harassing, instead choosing to reserve power of pre-filing injunction against prolific filers whose suits ranged in number from the dozens to the hundreds).

While Plaintiff may have escaped a pre-filing injunction here, he is warned that further similar suits could well tip the balance against him and lead to the imposition of such a sanction.

## IV.  Conclusion

For the aforementioned reasons, the Court will grant Defendants' Motions to Dismiss and dismiss this case with prejudice, with the exception of Count III, the Virginia conspiracy count, and any other state law claims Plaintiffs intended to bring, all of which will be dismissed without prejudice. It will deny Defendants' Motion for Sanctions. A separate Order consistent with this Opinion will be issued this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: February 21, 2012